LAW OFFICES OF

# JEFFREY LICHTMAN

11 EAST 44ᵀᴴ STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.JeffreyLichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
DAVID GELFAND

PH: (212) 581-1001
FX: (212) 581-4999

April 5, 2022

**BY ECF**
Hon. Andrew L. Carter
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **United States v. Iseni, et al., 20 CR 660 (ALC)**

Dear Judge Carter:

### A. **INTRODUCTION**

This letter is submitted on behalf of defendant Abduraman Iseni in advance of his April 19, 2022 sentencing. With this letter, the defendant respectfully requests a sentence which is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2) due, in part, to the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The basis for this request is as follows: *first*, Mr. Iseni quickly accepted responsibility for his criminal conduct, indeed, he is one of the just three individuals who have pleaded guilty of the 16 defendants in this case; *second*, the defendant has experienced extraordinarily harsh conditions at the Metropolitan Detention Center ("MDC"), where he has remained incarcerated for nearly the entire pandemic ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *third*, the defendant will suffer additional punishment in that he will be deported after serving his sentence despite having no apparent citizenship in any country; and *fourth*, a review of the defendant's life finds that there are many good deeds and the prospects for his rehabilitation are very good.

### B. **THE DEFENDANT'S GUILTY PLEA**
### **AND RESULTING GUIDELINES RANGE**

On October 12, 2021, Mr. Iseni pleaded guilty pursuant to a plea agreement to Counts One through Four, Six, Eight, Ten and Eleven of an eleven-count Indictment, which charged him

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 2

with Racketeering Conspiracy, in violation of 18 § U.S.C. 1962(d) (Count One); Conspiracy to
Operate an Illegal Gambling Business, in violation of 18 U.S.C. §§ 371 and 1955 (Count Two);
Conspiracy to Transmit Wagering Information by Wire, in violation of 18 U.S.C. §§ 371 and
1084 (Count Three); Conspiracy to Commit Interstate Threats, in violation of 18 U.S.C. §§ 371
and 875(c) (Count Four); Interstate Threats, in violation of 18 U.S.C. § 875(c) (Count Six);
Money Laundering, in violation of 18 U.S.C. § 1956 (Count Eight); Bank Fraud Conspiracy, in
violation of 18 U.S.C. § 1349 (Count Ten); and Making False Statements to a Bank, in violation
of 18 U.S.C. § 1014 (Count Eleven).  See September 24, 2021 Plea Agreement ("Plea
Agreement") at pp. 1-2.  Mr. Iseni faces no mandatory minium term of imprisonment and a
statutory maximum of 120 years.

        As recounted in the Presentence Investigation Report ("PSR"), for guideline calculation
purposes, Counts One, Two and Three are grouped ("Group One"), Counts Four and Six are
grouped ("Group Two"), and Counts Eight, Ten and Eleven are grouped "(Group Three").  PSR
at ¶¶ 55, 57-58; U.S.S.G. § 3D1.2(a), (c).  With regard to Group One, the base offense level is 19
(§2E1.1(a)(1)) and with no enhancements, the adjusted offense level is 19.  PSR at ¶ 64.  With
regard to Group Two, the base offense level is 12 (§2A6.1(a)(1)), and with no enhancements, the
adjusted offense level is 12.  PSR at ¶ 70.  Group Three has a base offense level of 17
(§§2S1.1(a)(1), 2b1.1(b)(1)(F)) and is subject to a two-level enhancement because the defendant
was convicted under 18 U.S.C. § 1956 (§2S1.1(b)(2)(B)), resulting in an adjusted offense level of
19.  PSR at ¶¶ 72, 76.

        Multiple count adjustment results in Groups One and Three receiving one grouping unit
each, and Group Two receiving one-half of one grouping unit.  PSR at ¶ 77.  With 2.5 grouping
units, three levels are added to the greatest of the adjusted offense levels, resulting in a combined
adjusted offense level of 22.  PSR at ¶¶ 79, 80.  Three levels are then subtracted for acceptance of
responsibility (§3E1.1), resulting in a total offense level of 19, carrying a sentencing range in the
Criminal History Category III of 37-46 months imprisonment.  PSR at ¶¶ 90, 130.[1]

---

[1] The Plea Agreement incorrectly calculated the total offense level to be 21 because it
failed to group Count Eight with Counts Ten and Eleven, which was required because Count
Eight (Money Laundering) "embodies conduct that is treated as a specific offense characteristic
in or adjustment to" Counts Ten and Eleven (Bank Fraud Conspiracy and Making False
Statements to a Bank).  PSR at ¶ 132.  Additionally, as observed in the PSR, while the parties
agreed that the defendant was an organizer or leader of the criminal activity in Group One, no
role enhancement is applied because the base offense level was determined by applying Chapter
Three grouping analysis.  PSR at ¶ 62.

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 3

### C. THE DEFENDANT'S BACKGROUND AND THE NATURE OF THE OFFENSE – APPLICATION OF § 3553(a) FACTORS

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines have been rendered advisory in nature, leaving sentences to the district court's discretion, guided by the Guidelines and the other factors contained within 18 U.S.C. § 3553(a) and bounded by any applicable statutory minimum and maximum. This Section directs sentencing courts to "impose a sentence" that is "sufficient, but not greater than necessary, to comply with" the "need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant ...." 18 U.S.C. §3553(a)(1)-(2) (emphasis supplied). In making this determination, courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant ...." 18 U.S.C. § 3553(a)(1). Accordingly, we offer the following for the Court's consideration.

#### i. The Defendant's Harsh Conditions of Confinement During the COVID-19 Pandemic ███████████████████

There has been perhaps no more difficult time to be an incarcerated defendant in the United States than during the past two years. The defendant was arrested on December 10, 2020 and has spent nearly this entire period at the MDC, which has rendered communications with both defense counsel and his family extraordinarily difficult. For a majority of his period of incarceration, contact visits with his family were either prohibited outright or rendered nearly impossible. ███████████████████████████████████████████
████████████████████████ ████ ███████████████████
███████████████████████████████████████████████████
██████████████████████████████████

The conditions only worsened at the MDC when the Metropolitan Correctional Center in Manhattan ("MCC") was closed and the bulk of its inmates were transferred to Brooklyn, causing overcrowding. See United States v. Boyd, 21 CR 486 (SHS), 2022 WL 790771, at *2 (SDNY February 3, 2022) ("The MDC, long overcrowded, has recently had an influx of additional detainees due to the closure of the Metropolitan Correctional Center (MCC) and the transfer of the majority of its inmates to the MDC"). Apparent staffing issues and supply

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 4

shortages have made conditions even worse, especially when combined with a national lockdown inside federal prisons after a gang altercation in Texas in January.[2]



    Courts in both the Southern and Eastern Districts of New York have taken note of the deplorable conditions at the MDC and its affects on pretrial detainees. For example, Judge Garaufis in March 2022 denounced the conditions of pretrial confinement at the facility as "unreasonably and unusually harsh." United States v. Elias, No. 18 CR 33, 2022 WL 805334, at *6 (EDNY March 16, 2022); see also United States v. Rolle, 20 CR 564 (AJN), 2022 WL 605712, at *1 (SDNY March 1, 2022) (observing that the Court considered the "conditions at MDC" in imposing a below guidelines sentence). As "the severity of the conditions of confinement is a not unreasonable basis for a court to impose a shorter sentence than might otherwise be warranted," we respectfully request that the conditions of the MDC be factored into the Court's sentencing determination in this case. United States v. Zhong, 26 F.4th 536, 564 (2d Cir. 2022).

---

    [2] See Michael Balsamo and Michael Sisak, U.S. Federal Prisons on Lockdown After 2 Texas Inmates Killed, Associated Press, January 31, 2022, available at: https://www.usnews.com /news/politics/articles/2022-01-31/us-federal-prisons-on-lockdown-after-2-texas-inmates-killed (last viewed March 24, 2022).

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 5

ii.    **The Immigration Consequences of Mr. Iseni's Conviction**

Mr. Iseni is not a citizen of the United States, indeed, according to the PSR, "he does not appear to have citizenship in any country." Sentencing Recommendation, PSR at p. 30. Presently facing removal proceedings, Mr. Iseni entered the United States in 1986 and was granted political asylum here after escaping civil war in the former Yugoslavia. PSR at ¶ 101.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████      ╦      ██████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████ He has a wife and two young children, ages 10 and 4, with whom he lived in Staten Island prior to his arrest. As both his wife and children are United States citizens, they are likely to be separated from him for a period of time upon Mr. Iseni's deportation, when he will be forced to leave behind his entire life. And as he does not appear to have citizenship in any country (PSR at p. 30) it is unknown where he will be sent at the conclusion of his removal proceedings.

Further, while serving his sentence, Mr. Iseni's immigration status will place him in a far worse position than non-alien prisoners. For example, because deportation proceedings have already begun, he will <u>not be eligible</u> to serve the final ten percent of his sentence in a halfway house. Instead, he will be immediately transferred to a detention facility at the completion of his sentence to await the outcome of his immigration case, <u>adding a significant period of additional incarceration</u>.

While certainly tragic, Mr. Iseni's deportation may be considered a "mitigating factor" by this Court pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence. <u>See</u>, <u>e.g.</u>, <u>Brown v. United States</u>, No. 10 Cv. 3012, 2010 WL 5313546, at *1 (E.D.N.Y. December 17, 2010); <u>see also</u> <u>United States v. Sanchez</u>, 433 F. App'x 44, 45 (2d Cir. 2011) (sentencing court correctly reviewed § 3553(a) factors, including "argument that deportation would punish him"). Indeed, the Second Circuit has specifically held that "a district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant," in determining "what sentence is sufficient, but not greater than necessary, to serve the needs of justice, [pursuant to] 18 U.S.C. § 3553(a)." <u>United States v. Thavaraja</u>, 740 F.3d 253, 262-63 (2d Cir. 2014) (internal quotation marks omitted); <u>see e.g.</u>, <u>United States v. Chin Chong</u>, 2014 WL 4773978, at *13 (E.D.N.Y. Sept. 24, 2014) ("Critical to the determination of an appropriate sentence is the likelihood that [the] defendant will be deported as a result of his conviction. ... Even without a lengthy term of incarceration, [the] defendant will be ... punished for his wrongdoing by his expulsion from the United States"); <u>United States v. Escolastico</u>, 2011 WL 4448956, at *6 (S.D.N.Y. Sept. 26, 2011) ("In imposing

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 6

the sentence, the Court considers," *inter alia*, "the fact that [the defendant] will face deportation proceedings following his release from custody").

Accordingly, the foregoing collateral consequences of Mr. Iseni's conviction should be considered at his sentencing.

### iii.    The History and Characteristics of the Defendant

We have attached over 20 character letters in support of this submission, reflecting the significant and meaningful role that Mr. Iseni has played in the lives of friends, family members and recipients of his good deeds. It would be impossible to include a letter from every individual whom the defendant has positively influenced and equally daunting to comment on each that we have received,[3] still, the myriad letters on which we do remark paint a consistent picture of a "dedicated father," (Letter of Teuta Gerguri, attached as Exhibit C) whose "heart has always been on the loving and caring side," (November 29, 2021 Letter of Benny Saiti, attached as Exhibit D) and who "would give someone the shirt off his back or the shoes off his feet." December 3, 2021 Letter of Anthony Tallarine, attached as Exhibit E; see also Letter of Khalid Ibrahim, attached as Exhibit F ("His willingness to always help people either by giving [to] charity or by giving his time and labor to help people truly is inspirational"); Letter of Angela Dilo, attached as Exhibit G ("I have yet to meet a more generous and kind hearted individual"). Sadly, were it not for this sentencing, many of Mr. Iseni's exceptionally good deeds probably would have gone unrecognized.

The Defendant's Childhood

As recounted in the PSR, Mr. Iseni was born in Kosovo, where he remained until he was 21 years old. See PSR at ¶ 96. When he was still a child, his mother died of heart disease, leaving him to be primarily raised by family members. Growing up in conflict ridden Kosovo during a civil war was extraordinarily difficult. Mr. Iseni reported to Probation that when he was 13 years old, he was jailed for five days by Serbians when he was caught demonstrating against them at his school. PSR at ¶ 100. During that experience, he was held with thousands of others and "beaten with wooden sticks and deprived of food and water." Id. The defendant was not the only member of his family who was punished for demonstrating against the Serbians – one of his cousins was shot and another was placed in jail for 17 years. Id. Finally, in 1986, Mr. Iseni was granted a visa to enter the United States and train for the Olympics, as he was to represent Yugoslavia's wrestling team, however, he was granted political asylum in the United States thereafter and could not return to Yugoslavia to participate. PSR at ¶ 101. He was then slated to

---

[3] Additional character letters are collected and appended to the end of this submission as Exhibit T.

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 7

represent the United States in the 1996 Olympics, however, he was arrested in 1996 and charged
with racketeering – which ended his efforts to become an Olympic athlete. Id.

As noted in the submitted letters, growing up in a war-torn nation without a mother was
extraordinarily difficult for Mr. Iseni. The defendant's wife, Teuta, explains:

> Soon after we started dating, I learned of his difficult childhood.
> He shared with me how he was obligated to take the role of a father
> at a very young age, since his father was not around much and his
> mother died of heart disease when he was only nine years [old].
> Diamond was the one who helped to take care of his five siblings
> and from that young age learned responsibility and reliability.

Ltr. of Teuta Gerguri, Ex. C. And friend F. Alper Ture echoes: "He spoke to me at length about
his own father issues growing up. Basically he was an orphan." Letter of friend F. Alper Ture,
attached as Exhibit H (internal quotation marks omitted).

A Committed Family Man

Perhaps owing to the death of his mother at a young age, Mr. Iseni has held his
relationships with his remaining family members tightly, especially his wife and two children.
See, e.g., Ltr. of Khalid Ibrahim, Ex. F ("When [you] see him around his family and his children,
you can immediately tell what a great father he is").

The defendant's wife and mother of his children, Teuta, best describes Mr. Iseni's
dedication to his family in her letter to the Court:

> Family is something he longed for, therefore once we got married,
> he expressed how special and important it is to him that my family
> treated him as one of them. His dream has always been for
> him to become a father, the way he expresses his appreciation is
> through his caring and loving actions towards me, the kids and the
> extended family. That is why he loves family gatherings and enjoys
> every moment of it. My husband is always the one taking care of
> the kids, the dog, and house chores. He is eager to help with
> everything, never showing any sense of reluctancy.

***

Jᴇꜰꜰʀᴇʏ Lɪᴄʜᴛᴍᴀɴ

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 8

> Now that my husband is not home, I can't express in words how
> difficult my life has become not only for me, but my kids and even
> my extended family. ...
>
> Diamond played a huge role not only in my life but my kids' life
> too. Especially my son's life. He is the one who raised him mostly,
> since I worked long shifts. He changed his diapers, he would
> wake up at night to feed him, took care of him during the day as
> well and was the one to help raise him. When E[][4] cries at night he
> calls out "daddy" and in fact his first word was "daddy" not
> "mommy." He is very close with him. ███████████████

Ltr. of Teuta Gerguri, Ex. C; November 29, 2021 Letter of Fatmire Gerguri, attached as Exhibit I
████████████████████████████████ Mr. Iseni's brother-in-law,
Gazemend Gerguri, confirms this take:

> I am proud to say that my sister married a man with a kind and
> loving heart, and a father who has gladly played both roles of a
> mom and dad with his children. From the day they brought my
> niece home from the hospital after she was born, all I can
> remember was Diamond driving her around so she could fall asleep
> faster and so that my sister would be able to rest at night.

Letter of Gazmend Gerguri, attached as Exhibit J; see also Letter of Camille Kievesky, attached
as Exhibit K ("seeing Diamond interact with his children shows what a wonderful and caring
father he is").

Friend Xhozefa Zhilla has observed that Diamond is a "very hands-on father and
husband," adding:

> His wife is an ICU nurse and works very long hours, therefore this
> has caused him to take the role of both parents in the household.
> He cooks, cleans, takes care of their dog Peanut, gets the kids ready
> for school, picks them up, bathes them, and puts them to sleep.

---

[4] As required by Rule 21.3 of the SDNY Electronic Case Filing Rules and Instructions,
the names of Mr. Iseni's minor children have been replaced with their first initials. See SDNY
Electronic Case Filing Rules & Instructions, February 1, 2021 Edition.

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 9

> Never once have I heard his wife Teuta complain about him.  I
> would even tell my own husband "be more like Diamond!"

Letter of Xhozefa Zhilla, attached as Exhibit L; see also Letter of Vlora Gerguri, attached as
Exhibit M ("I always use Diamond as an example of what a great and involved father ... is,
especially when I have to remind my husband that fathers can also take ... great care of the kids
....").

Of his own experiences with the defendant, brother-in-law F. Alper Ture writes: "Prior to
me even joining his family, Diamond contacted me daily after my father passed away to make
sure I was doing 'OK.'  My blood relatives didn't bother to do that." Ltr. of F. Alper Ture, Ex.
H.  And sister-in-law Fatmire Gerguri notes: "He is the one that always makes sure that everyone
is ok ...." Ltr. of Fatmire Gerguri, Ex. I. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬ Id.; see also December 2, 2021 Letter of Robert Prima, attached as Exhibit
N ("I have always admired Mr. Iseni's passion for his family").

Another sister-in-law, Rezearta Gerguri, writes that Mr. Iseni is a very dedicated father
and a loving husband," further noting from her own experience: "He taught me how to drive, he
would be there whenever I needed him.  He would pick me up and drop me off anytime I needed
a ride or if trains didn't run on [a] normal schedule, it would always be Diamond who I would
call." Letter of Rezearta Gerguri, attached as Exhibit O.  Of the kindness and generosity that he
received from his brother as a child, Makfirete Dedushi recalls in his letter to the Court:

> Growing up without a mother, it was difficult at times to feel
> nurtured, especially during our migration to America.  Abduraman
> not only took care of me from birth but was able to provide for me
> in an environment where neither of us spoke English, somehow
> managing to put food on the table.  Though taking care of me
> through the form of a parent, he was also able to provide for me as
> a sibling.  He was always there for me when I needed him,
> spending a great deal of effort protecting not only me but my
> sisters, and nieces.  Still to this day, he focuses on ensuring
> everybody's safety, even with a family of his own.  Abduraman
> always listens and knows how to pick people up when they are in
> low spirits.  He's capable of making anybody feel special and cared
> for.  As a teenager, you go through intense rough patches,
> especially growing up without a mother.  He managed to make sure
> I knew I felt loved.  Abduraman always went out of his way to
> keep me happy.  When I was younger, I wanted to be a dancer, it
> was my dream.  Unfortunately, our father couldn't afford classes.

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 10

> Seeing how painful it was for me to be denied my dreams, he went
> and got a job to work in a field.  He was able to muster up enough
> money to pay for the classes, which led to some of the happiest
> moments of my life.  This is just one example of how kind
> Abduraman is.

November 29, 2021 Letter of Makfirete Dedushi, attached as Exhibit P.

Finally, brother-in-law Beqir Dedushi writes that he is "forever grateful" to the defendant, noting:

> Knowing Abduraman all these years, he's always been able to pull
> through not only for his family, but for mine as well, despite any
> adversity he's faced.  His dedication to supporting those around
> him is inspiring, and has deeply impacted the lives around him,
> mine included.  Growing up without a father, I never really had
> somebody who could teach me what it means to be a man.
> Whether it was taking care of my kids when there was nobody at
> home, supplying jobs for the unemployed, or working tirelessly to
> ensure a safe environment for his kids, <u>Abduraman's generosity
> was able to show me that being a man means more than just
> appearances and reputation</u>.

November 29, 2021 Letter of Beqir Dedushi, attached as Exhibit Q (emphasis supplied).

<u>A Dedicated and Reliable Friend</u>

It is not just his family members who sing Mr. Iseni's praises – the submitted letters also include anecdotes from friends who were also recipients of his good nature.  <u>See</u>, <u>e.g.</u>, Ltr. of Khalid Ibrahim, Ex. F ("Diamond is the type of man if you call him anytime of the day or night, he would not hesitate to try to help you in any manner possible to better the situation").  For example, Benny Saiti recalls in his letter to the Court:

> Diamond has taught me that life's happiness comes from within
> your home and heart first.  Moreover, the key to that being true and
> caring to your loved ones and community, this is Diamond.  He has
> helped me stay away from a life of bad friends [a]lcohol, [d]rugs,
> [l]ate nights, [d]ivorce and the inevitable demise of my life and
> career.  Instead of having friends my age I chose to learn from
> Diamond on what makes life better.  His presence in my life is why
> I chose to be the best I can be to my loved ones.  He has taught me

Jeffrey Lichtman

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 11

> that our greatest achievements in life will be having our own
> children. According to my dear friend Diamond, "[h]ard work and
> a happy family is heaven on earth Benny, [w]ake up early and
> count your blessings."

Ltr. of Benny Saiti, Ex. D; Ltr. of Camille Kievsky, Ex. K ("Diamond has always been there, as a
friend to offer good advice and help in my time of need").

From his experiences with the defendant in his time of need, Anthony Tallarine informs
the Court:

> My father passed away a couple years ago and his kind words and
> funny stories made me both laugh and cry as we all remembered
> our childhood, he is honestly a great man and has help mold me
> into who I am today. I have always looked at him as a mentor,
> because of his work ethic and personal touch that he brings to
> every situation. He has personally helped friends and family find
> jobs for their children and other family members in the past and
> has checked up on them.

Ltr. of Anthony Tallarine, Ex. E. Similarly, Xhozefa Zhilla recounts in her letter:

> I remember when my husband and I were going through a difficult
> time in our marriage and were considering divorce, it was him who
> sat us both down and spoke to us. He kept telling us "nothing in
> this world is more important than family. At the end, the person
> who you wake up to and go to sleep with is the person who will be
> there for you in your hardest times." This resonated with me for a
> very long time and still does till this day.

Ltr. of Xhozefa Zhilla, Ex. L; see also Ltr. of Angela Dilo, Ex. F ("does not forget a birthday, he
is the first person to call").

Of his experiences with the defendant, friend Robert Prima praises:

> In all the time that I have known him, all he has ever wanted to do
> is to help out everyone that he can. I would meet him for lunch or
> dinner and never have a chance to speak with him because he knew
> everyone in the restaurant (wherever we were). He was always
> making sure everyone and their families were doing well. If he
> heard someone was struggling with work, he would find out what

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 12

their talents were and then reach out to his network of business owners in order to find a job for that individual in need of work.

If a friend needed new clothes, Mr. Iseni would offer them the shirt off of his back. In fact, on more than one occasion, he has offered to lend me his car or a room in his house when I am visiting New York. He knows I rent a car and stay in a hotel each time I come up. <u>I am not one to impose, but if I ever needed a helping hand, I know that I can count on Mr. Iseni.</u>

Ltr. of Robert Prima, Ex. N (emphasis supplied); Letter of Yunling Zheng, attached as Exhibit R ("When I think of Diamond, I think of the man who always greets me every morning with a smile on his face and asks if he can help me with anything").

<u>Commitment to Helping Others</u>

In addition to his being a dedicated friend, the submitted letters also hail Mr. Iseni's desire to help those in need. <u>See, e.g.,</u> Ltr. of Anthony Tallarine, Ex. C ("His kind nature has been to help anyone in need without anything in return"). For example, Gazmend Gerguri provides a particularly poignant account of the defendant's dedication to helping the less fortunate in his letter:

Diamond is an empathetic man who is compassionate to the suffering of others. He is the first to get up and offer his seat to a stranger and the first to extend a generous hand to those who are less fortunate. I had the pleasure of working with Diamond 11 years ago when I would help run his panini and crepes restaurant while I was still in my early twenties, and I can honestly say the experience inspired me to become a better man. <u>One of our regular customers at the time happened to be a homeless man who lived in Harlem but would pay daily visits to our restaurant. He would come and ask for money so he could buy food and Diamond gladly gave him money every time he saw him. Diamond would offer the homeless gentleman a table to sit and food from his restaurant for free. One day I asked Diamond why he did this because I was concerned the man's foul scent and poor personal hygiene might upset or offend other customers. Diamond's response was that "We always have to help those in need as one day you'll want a man to do the same for you."</u> That was an important lesson I learned from Diamond that I try to implement in my daily life even today.

JEFFREY LICHTMAN

Hon. Andrew L. Carter
United States District Judge
April 5, 2022
Page 13

Ltr. of Gazmend Gerguri, Ex. J (emphasis supplied); see also Ltr. of F. Alper Ture, Ex. H ("He has never turned down anyone in need").

Finally, Rabbi Edgar Gluck, who has known the defendant for some thirteen years, notes in his letter that Mr. Iseni "has always volunteered to help whenever called upon, day and night," adding: "He often repaired cars for different charities at no cost when asked."  November 29, 2021 Letter of Rabbi Edgar Gluck, attached as Exhibit S; see also Ltr. of Makfirete Dedushi, Ex. P ("goes out of his way to help others").

**D.    CONCLUSION**

Defendant Abduraman Iseni comes before this Court asking for mercy.  A life filled with good deeds and hard work has forever been marred by his criminal actions.  Nevertheless, as the powerful enclosed letters reveal, Mr. Iseni is a decent and giving man who unlike many defendants has made efforts to help friends, family and even strangers throughout his life, when no one was watching, when he had no need to impress a judge deciding his fate.  For these reasons and the others stated herein, a lenient sentence is respectfully requested.

Respectfully submitted,

Jeffrey Lichtman
Jeffrey Einhorn

Encs.

cc:    Samuel Raymond, Esq.
       David Felton, Esq.
       Assistant United States Attorneys (by ECF)